PROST, Circuit Judge,
concurring-in-part and dissenting-in-part.
I join the majority opinion with respect to many of the issues discussed therein. However, I respectfully dissent with respect to the proper construction of the “heuristic” claim terms in the '949 patent. Additionally, I dissent from the majority’s decision to vacate the district court’s grant of summary judgment regarding Apple’s request for an injunction, as I would affirm that decision. As I also depart from the majority’s reasoning while reaching the same result on several other issues, I write separately to explain my views.
I. Claim Construction of The '949 Patent
A. “Means-Plus-Function”
The majority concludes that the “heuristic” claim terms in the '949 patent have sufficiently definite structure to avoid means-plus-function treatment. Majority Op. 1304. I disagree.
As an initial matter, the majority misstates our law on means-plus-function claiming. Generally speaking, a means-plus-function analysis proceeds in two phases: first, the court must determine whether the claim term is drafted in means-plus-function format such that 35 U.S.C. § 112 ¶ 6 applies. See Kemco Sales, Inc. v. Control Papers Co., 208 F.3d 1352, 1361 (Fed.Cir.2000) (“Before a court attempts to analyze what appears to be a means-plus-function claim limitation, it must first assure itself that such a claim limitation is at issue.”). Only then should the court undertake to construe the disputed claim term by identifying the “corresponding structure, material, or acts described in the specification” to which the claim term will be limited. Welker Bearing Co. v. PHD, Inc., 550 F.3d 1090, 1097 (Fed.Cir.2008) (“Because ‘mechanism for moving said finger’ is a means-plus-function limitation, this court must next exam *1335 ine the trial court’s identification of ‘the corresponding structure, material, or acts described in the specification and equivalents thereof.’ ”).
Although the majority accurately states these legal principles, see Majority Op. 1296, it fails to faithfully apply them. Rather, the majority’s analysis collapses these two steps into one, and in doing so, it effectively renders the category of non-indefinite means-plus-function claim terms a null set.
The majority correctly states that the proper inquiry in determining whether a claim term is drafted in means-plus-function format is whether the limitation has “sufficiently definite structure.” Majority Op. 1297-98. The majority then identifies several ways in which a term may be deemed to have such structure, such as when it has “a structural definition that is either provided in the specification or generally known in the art,” when it “out-lin[es] an algorithm, a flowchart, or a specific set of instructions or rules,” or when the specification “describ[es] the claim limitation’s operation, such as its input, output, or connections.” Id. at 1298-99. By contrast, the majority states, “if the claim merely recites a generic nonce word and the remaining claim language, specification, prosecution history, and relevant external evidence provide no further structural description to a person of ordinary skill in the art, then the presumption against means-plus-function claiming is rebutted.” Id. at 1300.
In effect, what the majority has done is imported the second step of the analysis (where you define the scope of a means-plus-function claim term based on the corresponding structure in the specification) into the first step (where you identify whether the term is drafted in means-plus-function format). The majority’s analysis implies that so long as a claim term has corresponding structure in the specification, it is not a means-plus-function limitation.[1] But such a rule would render every means-plus-function claim term indefinite. Under the majority’s approach, a term would only be deemed a means-plus-function limitation if it has no corresponding structure — an absurd result that would eviscerate means-plus-function claiming.[2]
*1336 Applying the proper legal analysis, there can be little doubt that the heuristic limitations are means-plus-function limitations.
To begin with, it is true that the absence of the word “means” in the disputed claim terms creates a presumption that these are not means-plus-function limitations. See Inventio AG v. ThyssenKrupp Elevator Ams. Corp., 649 F.3d 1350, 1356 (Fed. Cir.2011). However, it is undisputed that the heuristics limitations recite functions performed by the heuristics (e.g., “determining that the one or more finger contacts correspond to a command to transition from displaying a respective item in a set of items to displaying a next item in the set of items”). The relevant question therefore is whether the claim fails to recite sufficient structure for performing those functions, in which case the presumption against means-plus-function treatment would be overcome. See id.
As we have previously explained:
What is important is whether the term is one that is understood to describe structure, as opposed to a term that is simply a nonce word or a verbal construct that is not recognized as the name of structure and is simply a substitute for the term “means for.” The court in Personalized Media Communications drew the pertinent distinction in holding that the term “detector,” although broad, is still structural for purposes of section 112 ¶ 6 because it “is not a generic structural term such as ‘means,’ ‘element,’ or ‘device’; nor is it a coined term lacking a clear meaning such as ‘widget’ or ‘ram-a-fram.’ “
Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1360 (Fed.Cir. 2004) (quoting Personalized Media Commc’ns, LLC v. Int’l Trade Comm’n, 161 F.3d 696, 704 (Fed.Cir.1998)). Following this, we have found that terms such as “computing unit,” Inventio, 649 F.3d at 1359-60, and “soft start circuit,” Power Integrations, Inc. v. Fairchild Semiconductor International, Inc., 711 F.3d 1348, 1365 (Fed.Cir.2013), connote sufficient structure to avoid means-plus-function treatment. On the other hand, terms such as “colorant selection mechanism,” Massachusetts Institute of Technology v. Abacus Software, 462 F.3d 1344, 1353-54 (Fed.Cir. 2006), and “mechanism for moving said finger,” Welker Bearing, 550 F.3d at 1095-97, have failed to recite sufficient structure to avoid means-plus-function treatment.
The term heuristic, which the district court construed as “rules to be applied to data to assist in drawing inferences from that data,” is a vague concept that does not connote known, physical structure in the same way as the terms “computing unit” or “circuit.” Rather, the term heuristic is much more similar to the imprecise terms “mechanism,” “means,” and “element.” Therefore, I would affirm the district court’s conclusion that the heuristic limitations are subject to means-plus-function treatment.
If, as the majority concludes — in my view incorrectly — our precedent dictates that the “heuristic” limitations in the '949 patent are not subject to means-plus-function treatment, then perhaps it is time to revisit the issue of when claim language invokes § 112 ¶ 6, particularly for computer-implemented inventions. As explained above, I see no real difference between the following two claim limitations:
*1337 a next item means for determining that the one or more finger contacts correspond to a command to transition from displaying a respective item in a set of items to displaying a next item in the set of items; and
a next item heuristic for determining that the one or more finger contacts correspond to a command to transition from displaying a respective item in a set of items to displaying a next item in the set of items.
The first limitation would surely be construed as a means-plus-function limitation. Yet, although the second limitation provides no more real structure than the first, the majority concludes that it is outside the realm of § 112 ¶ 6.
That one minor drafting decision greatly expands the scope of the claim limitation because the claim is not limited to the corresponding structure disclosed in the patent specification. Indeed, under the majority’s view, this case provides a stark example of how patent applicants are able to claim broad functionality without being subject to the restraints imposed by § 112 ¶ 6. As interpreted by the majority, the “next item heuristic” limitation in claim 1 covers any heuristic used by a touchscreen device to determine that “one or more finger contacts correspond to a command to transition from displaying a respective item in a set of items to displaying a next item in the set of items.” And yet, it is undisputed that the patent specification discloses only two such heuristics: a swipe from right to left and a tap on the right side of the screen. In fact, the majority relied on exactly those two heuristics as the necessary “structure” that removed this claim term from the means-plus-function realm altogether. Majority Op. 1301-02.[3]
Professor Lemley has recently written on the issue of functional claiming in software patents. Mark A. Lemley, Software Patents and the Return of Functional Claiming, 2013 Wis. L.Rev. 905 (2013). He acknowledges this court’s recent case law in which we have been “vigilant in limiting software patentees who write claims in means-plus-function format to the particular algorithms that implement those claims.” Id. at 926. However, he notes that in many cases involving software patents, we have not treated claims as means-plus-function claims at all, leading to problems of overbroad patents:
The presence of structure in the form of “a computer” or “a processor” or even “the Internet” has led the Federal Circuit to give these claims control over the claimed function however implemented. As a result, software patents have circumvented the limits the 1952 Act places on functional claiming. The result has been a plethora of software patents claimed not on the basis of the technology the patentee actually developed, but on the basis of the function that technology performs. Those claims aren’t limited to or commensurate with what the patentee invented, and they are accordingly the ones that patent plaintiffs tend to assert against defendants whose systems bear little resemblance to what the patentee actually invented.... [UJnder this functional claiming rubric the software patents with the least actual technical content end up with the broadest *1338 claims: “Its monopoly breadth is a function of its lack of technical specification.”
Id. at 926-28 (footnotes omitted) (quoting Christina Bohannan & Herbert Hoven-kamp, Creation Without Restraint: Promoting Liberty and Rivalry in Innovation 125 (2012)); see also id. at 905 (“[Platen-tees claim to own not a particular machine, or even a particular series of steps for achieving a goal, but the goal itself. The resulting overbroad patents overlap and create patent thickets.”). I believe Professor Lemley raises valid concerns about this court’s means-plus-function jurisprudence as it relates to computer-implemented inventions. Although the majority here did not base its conclusion on such generic structural terms as “a computer” or “a processor,” the end result is the same: Apple’s '949 patent is construed broadly to cover the function performed by the heuristics, not the specific heuristics disclosed in the specification. This outcome should compel our court to reconsider when we treat functional claims as means-plus-function claims.
B. Corresponding Structure
Because I would affirm the district court’s conclusion that the heuristics limitations are means-plus-function limitations, I would therefore reach Apple’s alternative argument regarding the corresponding structure for the term “next item heuristic.”
The '949 patent specification contains two examples of a next item heuristic: a tap on the right side of the touchscreen and a right-to-left horizontal swipe. See, e.g., '949 patent col. 3411. 12-16 (“In some embodiments, the user can also initiate viewing of the next image by making a tap gesture 1620 on the right side of the image. In some embodiments, the user can also initiate viewing of the next image by making a swipe gesture 1616 from right to left on the image.” (emphases added)). Nevertheless, the district court rejected the horizontal swipe as corresponding structure for the claimed next item heuristic. The district court reasoned that a horizontal finger swipe fell within the scope of another claimed heuristic namely the “two-dimensional screen translation heuristic” in the prior claim limitation. The district court did not see how “the same user finger movement [could be] understood to communicate two separate commands.” J.A. 93. Therefore, the court limited the next item heuristic’s corresponding structure to “a heuristic that uses as one input a user’s finger tap on the right side of the device’s touch screen.” J.A. 94.
Apple argues — and I agree — that the district court failed to consider that the heuristics might apply in different scenarios. For example, in describing the photo album application depicted in Figure 16A of the '949 patent, the specification explains that the user can “initiate viewing of the next image by making a swipe gesture 1616 from right to left on the image.” '949 patent col. 3411.14-16. The specification goes on to explain, however, that “if just a portion of image 1606 is displayed, in response to detecting a finger drag or swipe (e.g., 1626), the displayed portion of the image is translated in accordance with the direction of the drag or swipe gesture (e.g., vertical, horizontal, or diagonal translation).” Id. at col. 35 11. 19-24. In other words, a horizontal swipe will be treated differently depending on whether a full image is displayed or the user has zoomed in on a portion of the image. There is nothing in the claim language that requires that the “two-dimensional screen translation heuristic” and “next item heuristic” apply in the same context. Therefore, I *1339 would reverse the district court’s decision to limit the corresponding structure to a finger tap on the right side of the screen, and would reverse the grant of summary-judgment of non-infringement for the accused products that use a “swipe” gesture as a next item heuristic.
II. Admissibility of ExpeRT Testimony RELATING TO THE '949 PATENT
While I concur in the judgment reversing and remanding the district court’s exclusion of the testimony of Apple’s expert, Brian Napper, based on his erroneous claim construction, I write separately to note my agreement with the district court that Napper’s reliance on the Magic Trackpad was inherently unreliable.
The majority concludes that the district court erred in excluding the testimony of Apple’s expert, Brian Napper, for two reasons. First, the district court’s analysis was based on an incorrect claim construction. Majority Op. 1315-16. Specifically, the district court criticized Napper for failing to isolate the value to consumers of the “tap for next item” functionality, and for failing to consider alternatives to a $35 million royalty that would enable Motorola to provide this functionality. See J.A. 112-14. These criticisms were based on the district court’s conclusion that the '949 patent’s claimed “next item heuristic” was a means-plus-function claim that was limited to a tap on the right-hand side of the screen to turn to the next item. See J.A. 112. The majority determined that this claim construction was erroneous because the “next item heuristic” was not a means-plus-function limitation. Majority Op. 1304. As explained above, I would affirm the district court’s construction of the “heuristic” claim terms as means-plus-function limitations, but would reverse the court’s ruling that the scope of the corresponding structure for the “next item heuristic” is limited to a tap on the right-hand side of the screen. Thus, although I arrive at the outcome in a different way, I concur in the majority’s conclusion that the district court’s exclusion of Napper’s testimony must be reversed and remanded on the basis of its erroneous claim construction.
However, unlike the majority, I do not believe the district court abused its discretion in excluding Napper’s testimony as unreliable. The district court determined that Napper’s reliance on the Magic Trackpad to calculate the value of the claimed functionality was unreliable because that product was not a sufficiently comparable benchmark. Specifically, the court said:
Napper’s proposed testimony does not provide a reliable basis for inferring the value even of the vertical scrolling feature. The fact that many consumers will pay more for a Magic Trackpad than for a mouse tells one nothing about what they will pay to avoid occasionally swiping unsuccessfully because their swiping finger wasn’t actually vertical to the screen. Maybe consumers would pay $2, but there is no evidence they would, or at least none furnished by Napper.
J.A. 115.
It is true that our precedent supports looking to the cost of benchmark commercial products in determining the value of a defendant’s infringement. See, e.g., i4i Ltd. P’ship v. Microsoft Corp., 598 F.3d 831, 853-56 (Fed.Cir.2010). However, as even Apple concedes, the Trackpad “contains none of the function asserted from the '949 patent.” Motorola Response Br. 39; see also Apple Reply Br. 70 (acknowl *1340 edging that “[t]hat is true”). Napper therefore began his analysis from a highly questionable starting point. And because the Trackpad does not contain any of the claimed functionality, the discounts Napper applied to get from $20 to $2 (supposedly because the Trackpad contains more features than those claimed by the '949 patent) appear to be completely arbitrary. Accordingly, I do not believe the district court abused its discretion in concluding that Napper’s proposed testimony failed to provide a reliable basis for inferring the value of the claimed functionality. On remand, I do not think it would be reversible error for the district court to again prohibit Apple from relying on such unreliable testimony.
III. Apple’s Request FOR Injunctive Relief
The district court granted summary judgment that Apple was not entitled to an injunction for infringement of the '949, '263, and '647 patents. The majority vacates the grant of summary judgment— apparently for all three patents — because of its reversal of the claim construction for the '949 patent. Majority Op. 1330-31. I respectfully dissent, and would affirm the grant of summary judgment for all three patents.
Apple argues that it presented ample evidence with respect to the eBay factors outlined above to survive summary judgment. I will only address the first injunction factor — irreparable harm — because I view it as dispositive.
Apple argues that it is being irreparably harmed by Motorola’s infringement because sales of Motorola’s infringing products are causing Apple to lose market share and downstream sales.[4] But in order to rely on lost market share and downstream sales to show irreparable harm, Apple must provide more than evidence showing merely that Motorola is taking market share from Apple. Rather, Apple must be able to show a causal nexus between the inclusion of the allegedly infringing features in Motorola’s phones and the alleged harm to Apple. See Apple III, 735 F.3d at 1360-61; Apple Inc. v. Samsung Elecs., 678 F.3d 1314, 1324 (Fed.Cir. 2012) (Apple I) (“Sales lost to an infringing product cannot irreparably harm a pat-entee if consumers buy that product for reasons other than the patented feature. If the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product.”).
The district court found that Apple had no evidence linking Apple’s lost market share and downstream sales to the inclusion of the allegedly infringing features in Motorola’s phones. See J.A. 152 (“Apple’s ‘feel good’ theory does not indicate that infringement of these claims (if they were infringed) reduced Apple’s sales or market share, or impaired consumer goodwill toward Apple products.”). Rather, the district court found that “Apple is complaining that Motorola’s phones as a whole ripped off the iPhone as a whole,” which the court explained was insufficient be *1341 cause “Motorola’s desire to sell products that compete with the iPhone is a separate harm — and a perfectly legal one — from any harm caused by patent infringement.” Id. at 153.
Apple contends that its evidence raises a genuine issue as to whether the allegedly infringing features are drivers of consumer demand for Motorola’s products. I disagree. First, with respect to the '949 patent, Apple cites consumer survey evidence purporting to show that “having a superior touchscreen interface — as opposed to a physical keyboard — drives consumers demand for smartphones.” Apple Br. 65. This evidence, however, says nothing about the specific features claimed in the '949 patent. See, e.g., Apple Inc. v. Samsung Elecs. Co., 695 F.3d 1370, 1376 (Fed.Cir.2012) (Apple II). The only evidence Apple cites that allegedly relates specifically to “the scrolling heuristics claimed by the '949 patent” is testimony from Motorola executives about what they thought would be important to consumers. Apple Br. 66. However, we found similar evidence, standing alone, to be insufficient to establish a causal nexus in Apple I, explaining:
While the evidence that Samsung’s employees believed it to be important to incorporate the patented feature into Samsung’s products is certainly relevant to the issue of nexus between the patent and market harm, it is not dispositive. That is because the relevant inquiry focuses on the objective reasons as to why the patentee lost sales, not on the in-fringer’s subjective beliefs as to why it gained them (or would be likely to gain them).
678 F.3d at 1327-28. Accordingly, I agree with the district court that Apple’s evidence fails to raise a genuine issue as to whether the features accused of infringing the '949 patent drive consumer demand for Motorola’s phones.
As for the '263 patent, Apple cites studies and surveys purporting to show that the claimed invention facilitated the development of popular apps for the iPhone and iPad, which in turn helped make Apple’s devices so popular. But Apple does not cite any similar studies for consumers of Motorola’s products. Even assuming the evidence shows that the '263 patent is a driver of demand for Apple’s products, that does not mean the '263 patent is a driver of demand for Motorola’s products. See Apple II, 695 F.3d at 1376. Apple’s only other evidence for the '263 patent allegedly shows Motorola’s subjective beliefs that using “Apple’s simplification of streaming technology” would help it gain sales. Apple Br. 67. Again, however, this evidence, standing alone, is insufficient to establish a causal nexus between Motorola’s incorporation of the allegedly infringing feature and the alleged harm suffered by Apple. See Apple I, 678 F.3d at 1327-28.
Similarly, with respect to the '647 patent, Apple cites evidence that “Motorola itself’ identified the patent’s “structure-detection feature” as “a high priority and a ‘differentiating’ feature.” Apple Br. 68 (quoting J.A. 29,857). Apple also cites a newspaper article describing the feature as a “cool[ ] new feature[ ]” in Apple’s products. J.A. 29,893. As with the '263 patent, this evidence is insufficient to establish the requisite nexus.
For these reasons, I agree with the district court that Apple’s evidence fails to raise a genuine issue as to whether the allegedly infringing features are drivers of consumer demand for Motorola’s products. As a result, Apple cannot show that Moto *1342 rola’s infringement has caused it irreparable harm. Apple therefore cannot meet the eBay standard for injunctive relief. Accordingly, I would affirm the district court’s grant of summary judgment of no injunctive relief.
IV. MOTOROLA’S Request FOR Injunctive Relief Relating to the '898 Patent
I concur in the majority’s judgment that Motorola is not entitled to an injunction for infringement of the '898 patent. Majority Op. 1381-32. However, I write separately to note my disagreement with the majority’s suggestion that an alleged in-fringer’s refusal to negotiate a license justifies the issuance of an injunction after a finding of infringement.
As an initial matter, I agree with the majority that there is no need to create a categorical rule that a patentee can never obtain an injunction on a FRAND-commit-ted patent.[5] Id. at 71-72. Rather, FRAND commitment should simply be factored into the consideration of the eBay framework. Moreover, I agree that a straightforward application of the eBay factors does not necessarily mean that in-junctive relief would never be available for a FRAND-committed patent. However, I disagree as to the circumstances under which an injunction might be appropriate.
Motorola argues — and the majority agrees — that an injunction might be appropriate where an alleged infringer “unilaterally refuses a FRAND royalty or unreasonably delays negotiations to the same effect.” Id. Motorola insists that in the absence of the threat of an injunction, an infringer would have no incentive to negotiate a license because the worst-case scenario from a patent infringement lawsuit is that it would have to pay the same amount it would have paid earlier for a license.
I disagree that an alleged infringer’s refusal to. enter into a licensing agreement justifies entering an injunction against its conduct, for several reasons. First, as Apple points out, an alleged infringer is fully entitled to challenge the validity of a FRAND-committed patent before agreeing to pay a license on that patent, and so should not necessarily be punished for less than eager negotiations. Second, there are many reasons an alleged in-fringer might prefer to pay a FRAND license rather than undergoing extensive litigation, including litigation expenses, the possibility of paying treble damages or attorney’s fees if they are found liable for willful infringement, and the risk that the fact-finder may award damages in an amount higher than the FRAND rates. Indeed, as Motorola itself pointed out, we have previously acknowledged that a trial court may award an amount of damages greater than a reasonable royalty if necessary “to compensate for the infringement.” Stickle v. Heublein, Inc., 716 F.2d 1550, 1563 (Fed.Cir.1983). Thus, if a trial court believes that an infringer previously engaged in bad faith negotiations, it is entitled to increase the damages to account for any harm to the patentee as a result of that behavior.
But regardless, none of these considerations alters the fact that monetary damages are likely adequate to compensate for *1343 a FRAND patentee’s injuries. I see no reason, therefore, why a party’s pre-litigation conduct in license negotiations should affect the availability of injunctive relief.
Instead, an injunction might be appropriate where, although monetary damages could compensate for the patentee’s injuries, the patentee is unable to collect the damages to which it is entitled. For example, if an alleged infringer were judgment-proof, a damages award would likely be an inadequate remedy. Or, if a defendant refused to pay a court-ordered damages award after being found to infringe a valid FRAND patent, a court might be justified in including an injunction as part of an award of sanctions.
But regardless, these circumstances are not present in this case, and I agree with the district court that under the facts here, Motorola cannot show either irreparable harm or inadequacy of damages. I would therefore affirm the district court’s denial of Motorola’s claim for injunctive relief for the '898 patent.
Conclusion
For the reasons above, I concur in part and dissent in part.

. Admittedly, the majority suggests that "it is possible to find that a claim limitation does not connote sufficiently definite structure despite the presence of some corresponding structure in the specification.” Majority Op. 1297. But the majority’s actual analysis of how to identify a sufficiently definite structure to avoid means-plus-function treatment suggests that the opposite is true.

. Nothing so clearly demonstrates the majority's confusion on this issue as the cases on which it relies. In support of its view that a court must scour the specification for corresponding structure in order to save a claim term from means-plus-function treatment, the majority cites several cases that were attempting to identify the corresponding structure of undisputedly means-plus-function claim terms. For example, the majority cites Typhoon Touch Technologies, Inc. v. Dell, Inc., 659 F.3d 1376, 1385 (Fed.Cir.2011), for the proposition that a claim may contain sufficient structure to avoid means-plus-function claiming by reciting an algorithm. Majority Op. 1298-99. However, the claim term at issue in that case was "means for cross-referencing,” which no one disputed was a means-plus-function limitation. This court's search for an algorithm to support that claim term was merely an attempt to save the means-plus-function term from indefiniteness. See Typhoon Touch, 659 F.3d at 1385-86. The same is true of Finisar Corp. v. DirecTV Group, Inc., 523 F.3d 1323 (Fed.Cir.2008), on which the majority also relies. Id. at 1340 (evaluating whether “computer-implemented means-plus-function claims” disclosed enough of an algorithm to provide the necessary structure under § 112, ¶ 6). The majority's misreading of these cases is all the more striking because it is the same error the ma *1336 jority accuses the district court of committing in its reading of Aristocrat Technologies Australia Pty Ltd. v. International Game Technology, 521 F.3d 1328, 1333 (Fed.Cir.2008). Majority Op. 1298.

. Oddly, in defining “heuristic,” the majority states that it “does not include all means for performing the recited function.” Majority Op. 1301. But of course, once this court has ruled that the term is not a means-plus-function limitation, that term can indeed be construed so broadly.

. Apple also argues that a finding of irreparable harm is supported by evidence showing that Apple has a policy against licensing competitors to practice the three asserted patents. Apple's willingness to license the asserted patents is, of course, relevant to the second injunction factor — the inadequacy of legal remedies to compensate for irreparable harm. See, e.g., Apple Inc. v. Samsung Elecs. Co., 735 F.3d 1352, 1369-71 (Fed.Cir.2013) (Apple III). However, I am not aware of any cases establishing that a policy against licensing patents can show irreparable harm in the first place.

. For what it’s worth, I would note that the district court did not apply a per se rule that injunctions are unavailable for SEPs. Rather, Judge Posner expressly noted that injunctive relief might have been appropriate if Apple had "refuse[d] to pay a royalty that meets the FRAND requirement.” J.A. 140. Thus, the majority need not have suggested that the district court erred insofar as it applied such a categorical rule. See Majority Op. 1331-32.