REYNA, Circuit Judge,
dissenting.
I agree with the majority that the district court erred in finding that the “graphical display representative of a classroom” terms require a pictorial map. The majority, however, ignores critical evidence showing that an image of a visually depicted virtual classroom is required. Further, I do not agree that claim 8 of the '840 patent discloses sufficient structure to keep the claim limitation “distributed learning control module” outside of the requirements of 35 U.S.C. § 112, paragraph 6. For these and the reasons set forth below, I respectfully dissent.
I
The majority reverses the district court’s conclusion that the “graphical dis *1381 play representative of a classroom” terms require a pictorial map and construes the terms as “a graphical representation of an at least partially virtual space in which participants can interact.” While the majority is correct that the claims of the '840 patent do not require a pictorial map, the majority has adopted a construction that ignores a critical limitation. As reviewed below, the specification and prosecution history make clear that the “graphical display representative of a classroom” terms are properly construed as requiring a visually depicted virtual classroom.
During patent prosecution, the applicant explained that the invention is distinct from the prior art because the patent requires a “visual virtual classroom” displayed on both a first and second computer system:
Additionally, [the prior art] does not disclose the claimed feature of “creating a graphical display representative of the classroom” on a second computer system coupled to the network. The present invention allows both a first computer system (for example, the presenter computer system) and a second computer system (for example, an audience member) to view a graphical display of the classroom. This claimed feature of the present invention allows the audience members to interact in a visual virtual classroom environment with both the presenter and other audience members. By contrast, [the prior art] merely discloses “[as] the students log in, their seating locations in the classroom are shown by a highlighted icon in the classroom map on the teacher’s screen.” ... [The prior art] does not teach or suggest displaying a graphical display representative of a classroom on a student’s screen.
J.A. 1267-68 (original emphasis removed and emphases added). These statements in conjunction with the patent’s claim terms confirm the significance of displaying a visually depicted virtual classroom.
The “classroom metaphor” is used extensively in characterizing the operation, and touting the benefits, of the inventions embodied in the '840 patent. The Abstract teaches that “[t]he classroom environment module provides a classroom metaphor having a podium and rows of seats to the presenter and audience computer systems.” '840 patent Abstract. The Summary of the Invention states that the drawbacks of the prior art are overcome “by a distributed learning system that uses industry-standard computer hardware and software linked by a network like the Internet to provide a classroom- or auditorium-like metaphor to at least one presenter and at least one audience member.” Id. col. 211.10-14. The patent further teaches that a “feedback region” on the presenter’s computer “preferably displays a graphical representation of the classroom” and the “classroom environment module” is used to provide “a classroom- or auditorium-like metaphor to the presenter and audience members.” Id. col. 3 11. 11-13, col. 5 1. 67-col. 6 1.1.
In this case, the repeated mention of the classroom metaphor within the context of the invention and the importance of a visually depicted virtual classroom in the prosecution history indicate that the “graphical display representative of a classroom” terms require a visually depicted virtual classroom. The construction derived by the majority reads out this important limitation that distinguishes the invention from the prior art. See Callicrate v. Wadsworth Mfg., Inc., 427 F.3d 1361, 1369 (Fed.Cir.2005) (holding that it was error for the district court to read out a limitation clearly required by the claim language and specification). It is error to read a claim too broadly, as it is to read a claim *1382 too narrowly. See, e.g., Phillips v. AWH Corp., 415 F.3d 1303, 1321 (Fed.Cir.2005) (en banc). In reading out this important limitation on the “graphical display representative of a classroom” terms, the majority sidesteps our well established rules of claim construction, causing them to reach an erroneous result.
II
The majority also concludes that the district court erred in construing the term “distributed learning control module” as a means-plus-function term. The majority holds that the term “distributed learning control module” connotes sufficient structure to keep the term outside the scope of 35 U.S.C. § 112, paragraph 6. Maj. Op. at 1380. The majority, however, finds structure where none exists.
Here, “distributed learning control module” does not connote sufficiently definite structure, and thus, the term is governed by § 112, paragraph 6. In place of using the term “means,” this claim limitation uses “module.” The claim limitation then recites three functions performed by the “distributed learning control module”:
[Distributed learning control module for' [ (1) ] receiving communications transmitted between the presenter and the audience member computer systems and [ (2) ] for relaying the communications to an intended receiving computer system and [ (3) ] for coordinating the operation of the streaming data module.
'840 patent col. 11 11. 56-61. This claim limitation is in the traditional means-plus-function format, with the minor substitution of the term “module” for “means.” The claim language explains what the functions are, but does not disclose how the functions are performed.[1] In this case, the term “module” is a “nonce” word, a generic word inherently devoid of structure.
“Module” is a “nonce” word that can operate as a substitute for “means” in the context of § 112, paragraph 6. As the district court found, “ ‘module’ is simply a generic description for software or hardware that performs a specified function.”[2] J.A. 31. Generic terms such as “mechanism,” “element,” “device,” and other “nonce” words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word “means” because they “typically do not connote sufficiently definite structure” and therefore may invoke § 112, paragraph 6. Mass. Inst, of Tech. v. Abacus Software, 462 F.3d 1344, 1354 (Fed.Cir.2006); see generally M.P.E.P. § 2181 (“The following is a list of nonstructural generic placeholders that may invoke ... 35 U.S.C. [§ ] 112, paragraph 6: ‘mechanism for,’ ‘module for,’ ‘device for,’ ‘unit for,’ ‘component for,’ ‘element for,’ ‘member for,’ ‘apparatus for,’ ‘machine for,’ or ‘system for.’ ”) (emphasis added).
Recognizing that the term “module” is a mere placeholder word with no definition in the specification, the majority resorts to extrinsic evidence in the form of the following dictionary definitions of the term “module”:
• The IBM Corporation, IBM Dictionary of Computing 439 (1st ed.l994)-a packaged functional hardware unit designed for use with other components and a part of a program that usually *1383 performs a particular function of related functions.
• Alan Freedman, The Computer Glossary 268 (8th ed.1998) a self-contained hardware or software component that interfaces with a larger system.
• John Daintith & Edmund Wright, Dictionary of Computing 315 (4th ed.1996) — programming or specification construct that defines a software component and a component of a hardware system that can be subdivided.
Maj. Op. at 1379-80. The majority concludes that “[tjhese definitions all show that the term ‘module’ has a structure connoting meaning to persons of ordinary skill in the computer arts.” Id. at 1380.
The definitions, however, only identify that “module” is either hardware, software, or both. Without more, the concept of generic software or hardware only reflects function. It refers only to a “general category of whatever may perform specified functions.” Robert Bosch, LLC v. Snap-On Inc., 769 F.3d 1094, —— (Fed. Cir.2014) (holding that the claim terms “program recognition device” and “program loading device” are governed by 35 U.S.C. § 112, paragraph 6 because they fail to connote sufficient structure). Consider that the IBM Dictionary of Computing uses the terms “functional hardware unit” and “[something] that performs a particular function.” Maj. Op. at 1379-80. The Computer Glossary similarly defines “module” in terms of its function: “interfac[ing].” Id. at 1380. Finally, the Dictionary of Computing defines “module” as a “construct” or “component.” Id. The definitions disclose what software or hardware potentially do, not how it is done.
Numerous other dictionary definitions from the relevant time period' also define the “module” in functional terms. For example, the Webster’s New World Dictionary of Computer Terms 331 (6th ed.1997) defines “module” as “[i]n a program, a unit or section that can function on its own.” The IEEE Standard Dictionary of Electrical and Electronics Terms 817 (5th ed.1993) defines “module” as “a logically separable part of a program” and goes on to note that “[t]he terms ‘module,’ ‘component,’ and ‘unit’ are often used interchangeably.”[3] The American Heritage College Dictionary 877 (3d ed.1997) defines “module” as “[a] portion of a program that carries out a specific function and may be used alone or combined with other modules of the same program.” These definitions, again, generally define “module” as generic software or hardware that performs a certain function.
The majority also undertakes a grammatical approach noting that the “adjectival modifiers ... cannot be ignored and serve to further narrow the scope of the expression as a whole.” Maj. Op. at 1380. The majority points to the terms “distributed,” “learning,” and “control” as modifiers that connote structure. Id. at 1380. While the majority is correct that the presence of modifiers can change the meaning of a claimed nonce word, the modifiers relied on by the majority do not provide any structural significance to the term “module.” The ordinary meanings of these terms do not connote structure, and neither the specification nor the prosecution history gives these adjectives any structural significance in this claim.
Finally, the majority concedes that the “distributed learning control module” op *1384 erates as a functional unit that is “described in a high degree of generality” in the specification using “functional expressions.” Id. at 1380. In my view, a “functional unit” claimed at a “high degree of generality” is pure functional claiming. The term “distributed learning control module” fails to connote any structure, the presumption against the application of means-plus-function claiming is rebutted, and, therefore, § 112, paragraph 6 applies.
Ill
Although the majority does not reach the issue of corresponding structure, I believe this analysis is necessary because the claim limitation at issue fails to disclose sufficient structure to keep “distributed learning control module” outside of the requirements of § 112, paragraph 6. Thus, I turn to the issue of whether the specification discloses sufficient structure that corresponds to the claimed function. I conclude that it does not.
The district court identified three claimed functions associated with the “distributed learning control module” term: (1) receiving communications transmitted between the presenter and the audience member computer systems; (2) relaying the communications to an intended receiving computer system; and (3) coordinating the operation of the streaming data module. The district court concluded that the specification fails to disclose structure corresponding to the “coordinating” function.
On appeal, it is undisputed that the claimed “coordinating” function is associated with the “distributed learning control module.” Where there are multiple claimed functions, as we have here, the patentee must disclose adequate corresponding structure to perform all of the claimed functions. Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1318-19 (Fed.Cir. 2012).
The district court was correct that the specification of the '840 patent fails to disclose corresponding structure because the specification does not set forth an algorithm for performing the claimed functions. See Aristocrat Techs. Austl. Pty Ltd. v. Int’l Game Tech., 521 F.3d 1328, 1333 (Fed.Cir.2008). Thus, I would affirm the judgment that claims 8-16 are invalid for indefiniteness under 35 U.S.C. § 112, paragraph 2.
For the foregoing reasons, I dissent.

. As we have often held, structure may also be provided by describing the claim limitation's operation, such as its input, output, or connections. Apple Inc. v. Motorola, Inc., 757 F.3d 1286, 1299 (Fed.Cir.2014).

. Williamson concedes this point. Appellant's Op. Br. at 43 (“[T]he term 'module,' standing alone, is capable of operating as a 'nonce word.' ”).

. Cf. M.P.E.P. § 2181 ("The following is a list of nonstructural generic placeholders that may invoke ... 35 U.S.C. [§ ] 112, paragraph 6: 'mechanism for,’ ‘module for,’ 'device for,’ ‘unit for,’ 'component for,' ‘element for,’ ‘member for,’ 'apparatus for,' 'machine for,' or ‘system for.' ”) (emphases added).